## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| JEFFREY A. DANGELO | : | Case No. 1:09cv512 |
| | : | |
| Plaintiff | : | (Judge Michael R. Barrett) |
| | : | |
| vs. | : | **DEFENDANT TOTAL QUALITY** |
| | : | **LOGISTICS, LLC'S MOTION TO DISMISS** |
| | : | **FOR FAILURE TO STATE A CLAIM AND** |
| | : | **LACK OF SUBJECT MATTER** |
| | : | **JURISDICTION** |
| TOTAL QUALITY LOGISTICS, LLC | : | |
| | : | |
| Defendant | : | |

Now comes the Defendant, Total Quality Logistics, LLC ("TQL"), by and through counsel, and pursuant to Civ. R. 12(B)(1) and 12(B)(6), moves this Court to dismiss this action for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. In addition, TQL respectfully requests that his Court abstain from jurisdiction over this matter as allowed by 28 U.S.C. §2201, the Federal Declaratory Judgment Act. The reasons for these motions are more fully stated in the accompanying memorandum.

Respectfully submitted,

Barry F. Fagel (#0060122)
Bradley D. McPeek (#0071137)
Lindhorst & Dreidame Co., L.P.A.
312 Walnut Street, Ste. 3100
Cincinnati, OH 45202
(513) 421-6630
(513) 421-0212
bfagel@lindhorstlaw.com
***Attorneys for Defendant***

<u>**Memorandum**</u>

**I.     Statement of Pertinent Facts.**

This case presents no more than a mere hypothetical question (not an actual controversy.)  It involves the Plaintiff Jeff Dangelo who voluntarily left his employment with TQL in May, 2009.  Although he attaches the wrong document to his Complaint, Dangelo <u>is</u> bound by a one-year non-compete agreement.  (The correct agreement is attached.)  And with respect to that agreement, without supplying any factual context, Dangelo now asks the Court to decide preemptively whether his non-compete is enforceable.

In asking this hypothetical question, Dangelo pleads only that Megacorplogistics wishes to hire Dangelo and that he "wishes to work for…Megacorplogistics."  (Compl. ¶¶11, 22).  But as stated herein, mere wishes do not satisfy the Constitution's Article III "case" or "controversy" requirement for subject matter jurisdiction.  And Dangelo does not plead a single fact sufficient to trigger that jurisdiction.  Specifically, missing from his Complaint is any mention of the following:

(1)     that he is presently engaged in an activity that violates his non-compete agreement;

(2)     that TQL is taking action to enforce the non-compete agreement;

(3)     that Dangelo and Megacorplogistics have agreed to specific employment terms;

(4)     what Dangelo's hypothetical new job would be at Megacorplogistics;

(5)     his hypothetical new duties with Megacorplogistics; and

(6)     for amount in controversy purposes, what his speculative new salary would be in his hypothetical new job with Megacorplogistics for one year (as compared with his potential earnings elsewhere).

In short, as stated herein, without some facts to transform this case from the speculative, this Court must decline Dangelo's request to issue an advisory opinion.

## II.    Argument.

### A.    In Invoking The Ohio Declaratory Judgment Act As Its Sole Basis For Relief, Plaintiff Fails To State A Claim.

First, as an initial matter, Dangelo has not stated a claim upon which relief can be granted, and the Court does not have subject matter jurisdiction over his Ohio cause of action. Dangelo seeks relief via the Ohio Declaratory Judgment Act.[1] That state statute is his only asserted basis for relief.

But this Court cannot apply the state statute. "The propriety of granting declaratory relief in federal court is a procedural matter."[2] Therefore, litigants in diversity cases seeking declaratory relief in federal court must invoke the <u>Federal</u> Declaratory Judgment Act, 28 U.S.C. §2201.[3] The purpose of this rule is to prevent federal courts from straying outside their Article III jurisdiction in the event the underlying state statute "is more lenient in its definition of case or controversy...."[4]

Because Dangelo has not pled the federal statute here, he has not stated a claim. His Complaint, therefore, must be dismissed.

---

[1] R.C. §2721.01, *et. seq.*

[2] *DeFeo v. Proctor & Gamble Co.*, 831 F. Supp. 776, 779 (N.D. Ca. 1993); *American Zurich Ins. Co. v. Cooper Tire and Rubber Co.*, 465 F. Supp. 2d 827, 831 (N.D. Oh. 2006) (stating that "the federal rules respecting declaratory judgment actions apply in diversity cases").

[3] *Id.* See also *Federal Kemper Ins. Co. v. Rarscher*, 807 F.2d 345, 351-52.

[4] *Federal Kemper Ins. Co.*, 807 F.2d at 351-52.

**B.    This Court Does Not Have Subject Matter Jurisdiction To Provide Dangelo With An Advisory Opinion.**

"Article III of the U.S. Constitution states that a federal court may only hear 'cases' and 'controversies.'"[5]  "This requirement applies with the same force to actions for declaratory judgments...."[6]  Indeed, the "case" and "controversy" requirement is built into the text of the Declaratory Judgment Act.[7]  It provides in relevant part as follows:

> In a case of <u>actual</u> controversy within its jurisdiction,...any court of the United States, upon filing of an appropriate pleading, may declare the rights and other legal relations of an interested party seeking such declaration, whether or not further relief is or could be sought.  Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.[8]

Litigants are not permitted to use the Declaratory Judgment Act as a vehicle for advisory opinions from federal courts.[9]  "To issue a declaratory judgment, the court must be faced with a 'real and substantial controversy admitting of specific relief through a decree of conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical set of facts.'"[10]

---

[5] *Klosek v. American Express Co.*, 2008 WL4057534, *18 (D. Minn. 2008).

[6] *Lyman v. St. Jude Medical S.C., Inc.*, 423 F. Supp. 2d 902, 905 (E.D. Wis. 2006); *American Zurich Ins. Co. v. Cooper Tire & Rubber Co.*, 465 F. Supp. 2d 827, 831(N.D. Ohio) (citing *Detroit, Toledo, and Ironton R.R. Co. v. Consolidated Rail Corp.*, 767 F.2d 274, 279 (6th Cir. 1985)).

[7] *Wright, Miller & Kane Federal Practice and Procedure*:  Civil 3d §2757.

[8] 28 U.S.C. §2201 (emphasis added).

[9] *Sery v. Federal Business Centers, Inc.*, 616 F. Supp. 2d 496, 503(D.N.J. 2008) (voicing reluctance to render "advisory opinions" by adjudicating claims not yet ripe under the Declaratory Judgment Act).

[10] *American Zurich Ins. Co.*, 465 F. Supp. 2d at 831 (quoting *Maryland Casualty Co. v. Pacific Coal and Oil Co.*, 312 U.S. 270, 273 (1941)).

This determination is made on a case by case basis.[11] "When determining whether an actual controversy exists, the appropriate inquiry is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."[12] "Stated differently 'a controversy,' to be justiciable, must be such that it can presently be litigated and decided <u>and not hypothetical, conjectural, conditional or based upon the possibility of a factual situation that may never develop</u>."[13] "In deciding whether the controversy is sufficiently immediate, 'declaratory relief is appropriate when and only when one or both parties <u>have pursued</u> a course of conduct that will result in imminent and inevitable litigation unless the issue is resolved by declaratory relief.'"[14]

These strict jurisdictional requirements are a graveyard for litigants (like Dangelo) who seek advisory opinions on their non-compete agreements. For purposes of subject matter jurisdiction under Article III and the Declaratory Judgment Act, the existence of the non-compete "is not enough to establish a controversy."[15] "Nor is it enough for the employee to express a desire to compete in the future."[16]

Applying this standard, the court in *Klosek v. American Express Co.*, declined plaintiff's request to declare his non-compete agreement with his former employer

---

[11] *Id.*

[12] *Id.* (citing *Detroit, Toledo, and Ironton Railroad Co.*, 767 F.2d 274, 279).

[13] *Id.* (emphasis added)

[14] *Id.* (citing 12 James W. Moore, *Moore's Federal Practice* §57.22[2][c] (3rd Ed. 2003) (emphasis added)).

[15] *Klosek v. American Express Co.*, 2008 WL4057534, *19 (D. Minn. 2008).

[16] *Id.*

unenforceable.[17]  The court held that it did not have subject matter jurisdiction where the plaintiff (like Dangelo) failed to allege either (1) that he was engaged in activity that violates the non-compete; or (2) that his former employer was taking action to enforce the non-compete.[18]  The court recognized that while the former employer and the plaintiff had "adverse interests," that was not enough.[19]  The court stated that it could not render a final judgment on a future "hypothetical scenario."[20]

Sims v. Exeter Architectural Products, Inc., is another example.[21]  There, the court held that the requested interpretation of a non-compete agreement would be an unconstitutional advisory opinion.[22]  In that case, the defendants reminded their former partner of his non-compete obligations in a letter from their lawyer.  The court found that not even this threat satisfied the Constitution's actual case or controversy requirement.  The court concluded that it did not have jurisdiction to issue a declaratory judgment before the plaintiff took employment with a competitor:

> Plaintiff…is asking this court to interpret the non-competition clause without finding the necessary facts.  For example, plaintiff has not conceded he has taken actions in contravention to the non-competition clause (i.e. obtained work with a corporation in direct competition with defendant or at least within the same industry.)  He has not alleged that as a result of newly obtained employment, he has been subjected to a lawsuit or the possibility of a lawsuit in the very near future.  Rather, plaintiff asks

---

[17] Id.

[18] Id. at *19.

[19] Id.

[20] Id.

[21] 868 F. Supp. 677 (M.D. Pa. 1994).  See also, McKenna v. PSS World Medical, Inc., 2009 WL2007116 (U.D. Pa. 2009).

[22] Id. at 684 ("Interpreting the non-competition clause of the Shareholders Agreement, thereby casting the contractual rights of the parties in stone, 'without finding the necessary facts constitutes advisory opinion writing, and that is constitutionally forbidden.'")

us to construe a contract provision and determine his future rights based upon a presupposed hypothetical.[23]

Accordingly, the court dismissed the plaintiff's declaratory judgment action on subject matter jurisdiction grounds.

Other courts have reached the same conclusion in the non-compete agreement context. For instance, in *Lyman v. St. Jude Medical S.C., Inc.*, the court held that the plaintiff, a sales representative, could not preemptively challenge the validity of his non-compete agreement where there was no then existing claim that the agreement had been breached.[24] And in *Bruhn v. STP Corp.*, the court held that it did not have jurisdiction to interpret a non-compete provision where "the act which would allegedly result in liability – plaintiff's acceptance of employment in violation of the covenant – has not yet occurred."[25]

This authority has easy application here. According to his Complaint, Dangelo has not committed "the act which would allegedly result in liability" – acceptance of employment with Megacorplogistics.[26] Nor is he presently engaged in any activity that violates the non-compete (according to his pleadings.) Without this necessary factual predicate – or an allegation that TQL was taking action to enforce the non-compete – this Court cannot render judgment on Dangelo's hypothetical. And for good reason – as

---

[23] *Id.* at 684.

[24] 423 F. Supp. 2d 902, 905-06 (E.D. Wis. 2006). See also *Cohen v. Orthalliance New Image, Inc.*, 252 F. Supp. 2d 761 (N.D. Indiana 2003).

[25] 312 F. Supp. 903, 906 (D. Co. 1970). See also *Sery v. Federal Business Centers, Inc.*, 616 F. Supp. 2d 496 (D. N.J. 2008).

[26] *Id.*

any decision would be no more than a guess at events that might (or might not) occur in the future.

### C. Plaintiff Has Not Sufficiently Alleged That The Amount In Controversy Requirement Has Been Satisfied.

According to Dangelo, the Court has subject matter jurisdiction via 28 U.S.C. §1332. He contends that there is diversity of citizenship and that the amount in controversy exceeds $75,000.

With respect to Dangelo's allegation of diversity, TQL does not quarrel with that claim at this time. On its face, Dangelo's Complaint alleges he lives in Kentucky. And TQL has no way of knowing if that is currently true.

TQL <u>does</u> contest Dangelo's claim that the amount in controversy exceeds $75,000. "In a federal diversity action, the amount alleged in the complaint will suffice unless it appears to a legal certainty that the plaintiff in good faith cannot claim the jurisdictional amount."[27] Where a defendant seeks dismissal on amount in controversy grounds, the case will not be dismissed unless it appears that the plaintiff's assertion of the amount in controversy was made in bad faith, that is, if it appears, to a legal certainty, that the original claim was really for less than the amount in controversy requirement.[28]

"However, this liberal standard for a jurisdictional pleading 'is not a license for conjecture.'"[29] <u>Speculation will not suffice for purposes of determining the amount in controversy.</u>[30]

---

[27] *Davis v. DCB Financial Corp.*, 259 F. Supp. 2d 664, 675 (S.D. Oh. 2003).

[28] *Id.*

[29] *Id.* (citing *Morrison v. Allstate Indemnity Co.*, 228 F.3d 1255, 1268).

In a declaratory judgment action, the amount in controversy is measured by "the value of the object of the litigation.[31]   But in the hypothetical case that Dangelo has presented, he can only speculate as to that value.

This is because Dangelo voices only a desire to work for a competitor, but he pleads nothing concrete.  He does not say what his salary will be (if ever hired) for the time remaining on his one-year non-compete; what he would earn in commissions during that time; or if he will be cold-calling new businesses or soliciting old clients. Furthermore, the Complaint does not allege the claimed difference in the Plaintiff's expected earnings at Megacorplogistics and at a job not arguably violative of the non-compete.

These considerations all impact whether the amount in controversy requirement has been satisfied.  But Dangelo provides no guidance.  Without such guidance, this Court has not way to determine "the value of the object of the litigation."  Left only to impermissible speculation, the Court must dismiss this suit for failure to satisfy the amount in controversy requirement.

### D.    This Court Should Abstain From Its Discretionary Jurisdiction As Provided For By 28 U.S.C. §2201.

In the event the Court determines it ever has jurisdiction, it should refrain from exercising that jurisdiction.   "The Supreme Court has explained that while the Declaratory Judgment Act provides the district court with jurisdiction over such actions,

---

[30] *Minix v. Kawasaki Motors Corp., USA*, 2009 WL2212282 (E.D. Ky. 2009) (stating that speculation cannot satisfy the amount in controversy requirement).

[31] *Northup Properties, Inc. v. Chesapeake Appalachia, LLC*, 567 F.3d 767, 770 (6th Cir. 2009).

the court is 'under no compulsion to exercise that jurisdiction.'"[32]  The Court has stated that this Act "confers on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants."[33]  Specifically, "[t]he Declaratory Judgment Act provides that a district court 'may declare the rights and other legal relations of any interested party seeking such declaration....'"[34]

"This language affords the district court 'discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, _even_ when the suit otherwise satisfies subject matter jurisdictional prerequisites.'"[35]  A district court's decision to exercise jurisdiction over a declaratory judgment action is reviewed under the abuse of discretion standard.[36]  Five factors inform that decision:

> (1)   Whether the declaratory action would settle the controversy;
>
> (2)   Whether the declaratory action would serve a useful purpose in clarifying the legal relations and issues;
>
> (3)   Whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for _res judicata_";
>
> (4)   Whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach on state jurisdiction; and
>
> (5)   Whether there is an alternative remedy which is better or more effective.[37]

---

[32] Scottsdale Ins. Co. v. Flowers, _513 F.3d 546, 552 (6th Cir. 2008)._

[33] _Wilton v. Seven Falls Co._, 515 U.S. 277, 286 (1995).

[34] _Travelers Indemnity Co. v. Bowling Green Professional Asscs., PLC_, 495 F. 3d 266, 271 (citing 28 U.S.C. §2201(a) (emphasis in original)).

[35] _Id._

[36] _Id._

[37] _Id._

### 1.    A Declaratory Judgment Will Not Settle The Controversy.

A declaratory judgment in this case will not settle any controversies.  If anything, a judgment in Dangelo's favor will only escalate matters.   More specifically, a determination that the agreement is unenforceable will result in Dangelo joining a competitor.  In his new employment, Dangelo will inevitably use and disclose the same customer contact information that he relied upon when he was employed by TQL.  TQL considers this information to be a trade secret.  (Judge Ringland of the Clermont County Court of Common Pleas has agreed in a previous decision.)[38]

Dangelo's use of this information will then trigger a lawsuit by TQL against both Dangelo and his new employer under the Ohio Trade Secrets Act.  In this fashion, an advisory opinion by this Court regarding the enforceability of the non-compete will result in additional litigation.   On the other hand, if the Court abstains from jurisdiction, litigation is not inevitable.  Dangelo may honor his non-compete agreement.

### 2.    The Declaratory Judgment Action Would Serve No Useful Purpose In Clarifying The Legal Relations.

This second factor also favors TQL.   First, given the speculative nature of Dangelo's claim – that he "<u>wishes</u>" to join a competitor – a declaratory judgment can serve no useful purpose.  Without conduct that actually implicates the non-compete agreement, the Court will only be guessing at what might occur in the future.

In addition, a declaratory judgment on the non-compete agreement will not address the trade secrets component of this case.  That claim will still have to be litigated after Dangelo joins Megacorplogistics.

---

[38] *Total Quality Logistics, LLC v. Zavagno*, Clermont Cty. Ct of Comm. Pleas Case No. 2008CVC00498, Decision, Entry, and Order (March 19, 2008).

### 3.    Whether The Declaratory Remedy Is Being Used For Forum Shopping Or Procedural Fencing.

"The third factor is meant to preclude jurisdiction for 'declaratory plaintiffs who file their suits mere days or weeks before the coercive suits filed by a natural plaintiff and who seem to have done so for the purpose of acquiring a favorable forum.'"[39]  "The question is…whether the declaratory plaintiff has filed in an attempt to get her choice of forum by filing first."[40]

This factor weighs slightly in favor of TQL.  Specifically, while TQL cannot know what motivated Dangelo to file his speculative "what happens if I…" lawsuit, his claims arise entirely under state law such that a common pleas court would be the most logical place to hear them.

Furthermore, at the very least, Dangelo's suit is premature.  He has not been offered or accepted a job.  One would guess that his rush to the courthouse is cover for an attempt to violate his non-compete agreement.

### 4.    Whether The Use Of Declaratory Action Would Increase Friction Between State and Federal Courts.

This factor is generally only implicated where there is a similar state lawsuit seeking declaratory relief.  Because there is no similar state action in this case, this factor does not favor either party.

### 5.    Whether There Is A Better Or More Effective Alternative Remedy.

This final factor does not apply because Dangelo is not entitled to any remedy. He has not breached his agreement; he is not working for a competitor; and according

---

[39] *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 558 (6th Cir. 2008).

[40] *Id.*

to him, he has not disclosed TQL's trade secrets.  There is no case or controversy.  And without a case in controversy, there can be no remedy.

## III.    Conclusion.

For the foregoing reasons, the Defendant Total Quality Logistics, LLC, respectfully requests that this action be dismissed.  In the alternative, the Defendant asks that this Court abstain from jurisdiction as provided for by 28 U.S.C. §2201.

Respectfully submitted,

Barry F. Fagel  (#0060122)
Bradley D. McPeek  (#0071137)
Lindhorst & Dreidame Co., L.P.A.
312 Walnut Street, Ste. 3100
Cincinnati, OH  45202
(513)  421-6630
(513)  421-0212
bfagel@lindhorstlaw.com
**Attorneys for Defendant**

## CERTIFICATE OF SERVICE

I hereby certify that on the _3_ day of August, 2009 I electronically filed the foregoing with the Clerk of Court using the CM/ECF System which will send notification of such filing to the following:

Megan E. Clark, Esq.
Randolph H. Freking, Esq.
Freking & Betz, LLC
525 Vine Street, Sixth Floor
Cincinnati, Ohio  45202
*Attorneys for Plaintiff*

In addition, I hereby certify that on the date stated above, I have mailed by ordinary United States mail this document to above-named counsel.

Barry F. Fagel

517881v1

13